No. _____

---

IN THE
SUPREME COURT OF THE UNITED STATES

---

WILLIAM REAVES,

*Petitioner,*

v.

JULIE JONES, Secretary,
Florida Department of Corrections,

*Respondent.*

---

On Petition For A Writ Of Certiorari To
The United States Court of Appeals for the Eleventh Circuit

---

PETITION FOR A WRIT OF CERTIORARI
CAPITAL CASE

---

WILLIAM M. HENNIS III          RACHEL L. DAY
Litigation Director            Assistant CCRC-South
Florida Bar No. 0066850        Florida Bar No. 0068535
*Counsel of Record*

Office of the Capital Collateral
Regional Counsel - South
1 East Broward Boulevard, Suite 444
Fort Lauderdale, Florida 33301
Tel. 954-713-1284

CAPITAL CASE

## QUESTIONS PRESENTED

I.    Whether this Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984) and the subsequent applications of *Strickland* in *Williams v. Taylor*, 529 U.S. 362 (2000), and *Wiggins v. Smith*, 539 U.S. 510 (2003), require that ineffective-assistance-of-counsel errors be cumulated in the prejudice analysis?

II.    Whether the circuit court erred in reversing the district court's finding of ineffective assistance of counsel by refusing to consider the cumulative impact of counsel's errors in its prejudice analysis, contrary to the plain language and this Court's application of *Strickland v. Washington*?

# TABLE OF CONTENTS

QUESTIONS PRESENTED ....................................................................... i

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES ................................................................... iv

INDEX OF APPENDICES....................................................................... iv

PETITION FOR A WRIT OF CERTIORARI ........................................ vii

CITATION TO OPINIONS BELOW ...................................................... vii

STATEMENT OF JURISDICTION ...................................................... viii

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED ...................... ix

STATEMENT OF THE FACTS AND CASE............................................ 1

    A.    Introduction ....................................................................... 1

    B.    The Offense ........................................................................ 2

    C.    Evidence Presented At Sentencing ............................................ 3

    D.    Reaves' State Motion For Postconviction Relief......................... 5

    E.    State Postconviction Evidentiary Hearing .............................. 6

    F.    Federal Proceedings ............................................................. 7

    G.    Federal Court Evidentiary Hearing....................................... 7

    H.    District Court Ruling On Penalty Phase Ineffective Assistance Of Counsel............................................................................ 13

REASONS FOR GRANTING THE WRIT.............................................. 14

    I.    The Eleventh Circuit's Findings Were Factually Inaccurate. ............. 14

    II.    The Plain Language Of *Strickland* Instructs Courts To Evaluate Counsel's Cumulative "Errors" In The Prejudice Analysis................... 22

    III.    The Court Considers The Cumulative Impact Of Counsel's Errors. ...................................................................................... 24

IV.   Ineffective-Counsel And Co-Developing Materiality Law
      Mandate A Cumulative Prejudice Analysis...........................................27

V.    A Non-Cumulative Analysis Produces Arbitrary Results
      Contrary To The Eighth Amendment....................................................30

VI.   Conflict With Other Circuits ..................................................................32

CONCLUSION..............................................................................................36

## TABLE OF AUTHORITIES

Cases

*Ake v. Oklahoma*, 470 U.S. 68 (1985)...................................................................18

*Banks v. Cockrell*, 48 F. App'x 104 (5th Cir. 2002)......................................32

*Blanco v. Singletary*, 943 F.2d 1477 (11th Cir. 1991)..................................36

*Brady v. Maryland*, 373 U.S. 83 (1963).........................................................29

*Cave v. Singletary*, 971 F.2d 1513 (11th Cir. 1992).............................35, 36

*Cone v. Bell*, 492 F.3d 743 (6th Cir. 2007).....................................................34

*Cone v. Bell*, 566 U.S. 449 (2009).....................................................................34

*Cooper v. Secretary*, 646 F.3d 1328 (11th Cir. 2011)...................................36

*Furman v. Georgia*, 408 U.S. 238 (1972).........................................................31

*Gideon v. Wainwright*, 372 U.S. 335 (1963)...................................................30

*Hardwick v. Crosby*, 320 F3d 1127 (11th Cir. 2003)....................................35

*Hardwick v. Sec'y, Dep't of Corrs.*, 803 F.3d 541 (11th Cir. 2015)............35

*Kyles v. Whitley*, 514 U.S. 419 (1995)..............................................28, 29, 31

*Mooney v. Holohan*, 294 U.S. 103 (1935).......................................................29

*Porter v. McCollum*, 558 U.S. 30 (2009)...........................................................1

*Powell v. Alabama*, 287 U.S. 45 (1932)............................................................29

*Reaves v. Buss*, 2011 WL 13243586 (S.D. Fla. August 16, 2011)...........vii, 7

*Reaves v. Crews*, 2013 WL 12309316 (S.D. Fla. Sept. 4, 2013)....................7

*Reaves v. Jones*, 2015 WL 13657202 (S.D. Fla. March 3, 2015)........viii, 1, 37

*Reaves v. Sec'y, Dep't of Corrs.*, 717 F.3d 886 (11th Cir. 2013).........vii, 3, 4, 7

*Reaves v. Sec'y, Dep't of Corrs.*, 872 F.3d 1137 (11th Cir. 2017).........viii, 14, 15

*Reaves v. State*, 639 So. 2d 1 (Fla. 1994).................................................passim

*Reaves v. State*, 826 So. 2d 932 (2002)............................................................vii, 5, 6, 17

*Reaves v. State*, 942 So. 2d 874 (Fla. 2006) ................................................vii, 6, 23

*Rompilla v. Beard*, 125 S. Ct. 2456 (2005) ...............................................................22

*Strickland v. Washington*, 486 U.S. 688 (1984)................................................ passim

*United States v. Agurs*, 427 U.S. 97 (1976) ..............................................................30

*United States v. Bagley*, 473 U.S. 667 (1985).....................................................30, 31

*United States. v. Gray*, 878 F.2d 702 (3rd Cir. 1989)..............................................33

*Wiggins v. Smith*, 539 U.S. 510 (2003)............................................................... passim

*Williams v. Taylor*, 529 U.S. 362 (2000)......................................................25, 26, 27

## Statutes

28 U.S.C. § 1254(1)........................................................................................... viii

28 U.S.C. § 2254(d)..............................................................................................ix

## Other Authorities

American Bar Association Guidelines for the Appointment and Performance of
    Counsel in Death Penalty Cases (1989) ........................................................16

John H. Blume & Christopher Seeds, *Reliability Matters: Reassociating* Bagley
    *Materiality,* Strickland *Prejudice, and Cumulative Harmless Error*, 95
    J. Crim. L. & Criminology 1153, 1171 (2005)..................................................32

## Constitutional Provisions

U.S. Const. Amend. VI....................................................................................ix

U.S. Const. Amend. VIII.................................................................................ix

U.S. Const. Amend. XIV ................................................................................ix

## INDEX OF APPENDICES

*Reaves v. State*, 639 So. 2d 1, 3 (Fla. 1994)                                      Appendix A

*Reaves v. State*, 826 So. 2d 932, 941 (2002)                                  Appendix B

*Reaves v. State*, 942 So. 2d 874 (Fla. 2006)                                   Appendix C

*Reaves v. Buss*, 2011 WL 13243586 (S.D. Fla. August 16, 2011)        Appendix D

*Reaves v. Sec'y, Dep't of Corrs.*, 717 F.3d 886 (11th Cir. 2013)         Appendix E

*Reaves v. Jones*, 2015 WL 13657202 (S.D. Fla. March 3, 2015)         Appendix F

*Reaves v. Sec'y, Dep't of Corrs.,* 872 F.3d 1137 (11th Cir. 2017)        Appendix G

November 6, 2017 Order Denying Petition for Rehearing               Appendix H

## PETITION FOR A WRIT OF CERTIORARI

Petitioner, WILLIAM REAVES, is a condemned prisoner in the State of Florida. Petitioner urges this Honorable Court to issue a Writ of Certiorari to review the denial of a writ of habeas corpus by the United States Court of Appeals for the Eleventh Circuit.

## CITATION TO OPINIONS BELOW

The Florida Supreme Court opinion affirming convictions and sentence on direct appeal is reported as *Reaves v. State*, 639 So. 2d 1, 3 (Fla. 1994), and is attached hereto as **Appendix A**. The Florida Supreme Court's opinion affirming the circuit court denial of postconviction relief and denying petition for writ of habeas corpus is reported as *Reaves v. State*, 826 So. 2d 932, 941 (2002), and is attached hereto as **Appendix B**. The Florida Supreme Court's opinion affirming the denial of relief after remand for a limited evidentiary hearing on guilt phase ineffective assistance of counsel issues "and other related claims," is reported as *Reaves v. State*, 942 So. 2d 874 (Fla. 2006), and is attached hereto as **Appendix C**.

A petition for writ of habeas corpus was timely filed in the United States District Court, Southern District of Florida. The district court granted habeas corpus relief finding that trial counsel was ineffective at the guilt phase and penalty phase of the trial. *See Reaves v. Buss*, 2011 WL 13243586 (S.D. Fla. August 16, 2011), attached hereto as **Appendix D**. The grant of habeas relief was reversed by the Eleventh Circuit and remanded to the district court for further proceedings in *Reaves v. Sec'y, Dep't of Corrs.*, 717 F.3d 886 (11th Cir. 2013), attached hereto as **Appendix**

E. Following an evidentiary hearing on penalty phase ineffective assistance of trial counsel, the District Court again granted habeas corpus relief in *Reaves v. Jones*, 2015 WL 13657202 (S.D. Fla. March 3, 2015), attached hereto as **Appendix F**. Thereafter, the Eleventh Circuit Court of Appeals reversed the grant of relief, reported as *Reaves v. Sec'y, Dep't of Corrs.*, 872 F.3d 1137 (11th Cir. 2017), and attached hereto as **Appendix G**. The Eleventh Circuit Court of Appeals' Order denying Petitioner's Petition(s) for Rehearing is attached hereto as **Appendix H**.

## STATEMENT OF JURISDICTION

Petitioner invokes this Court's jurisdiction to grant the Petition for a Writ of Certiorari to the Eleventh Circuit Court of Appeals on the basis of 28 U.S.C. § 1254(1). The Eleventh Circuit issued its decision on September 28, 2017 and denied the subsequent motion for rehearing *en banc* on November 6, 2017. Mr. Reaves' motion to extend the time to file the instant petition was granted and the time extended to April 5, 2018. This petition is timely filed.

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence.

The Eighth Amendment to the United States Constitution provides:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

The Fourteenth Amendment to the United States Constitution provides in relevant part:

> [N]or shall any State deprive any person of life, liberty, or property, without due process of law.

28 U.S.C. § 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the Judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court Proceeding.

## STATEMENT OF THE FACTS AND CASE

### A.    Introduction

"An American soldier facing death at the hands of his government deserves effective representation. Mr. Reaves did not receive it – the penalty phase of his trial was constitutionally inadequate." *Reaves v. Jones*, 2015 WL 13657202 at *43.

Mr. Reaves fought in a bloody and violent conflict in the service of his country. Before his service, he was a bright and kind young man. But his experiences in Vietnam and Cambodia left him with the mental health condition Post-Traumatic Stress Disorder. Combat PTSD commonly contributes to and thus mitigates violent crimes committed by veterans after they have returned home. *See, e.g., Porter v. McCollum*, 558 U.S. 30, 43 (2009) ("Our nation has a long tradition of according leniency to veterans in recognition of their service, especially for those who fought on the front lines.").

In Mr. Reaves' crime, he shot and killed a police officer who sought to take a gun Mr. Reaves had in his possession and Mr. Reaves "panicked" Appendix F at *1.[1] He believed irrationally that "[o]ne of us got to go." *Reaves v. State*, 639 So. 2d 1, 3 (Fla. 1994). Mr. Reaves' war experience was at play in his crime. He was seen fleeing the scene by a witness, bobbing and weaving as if he believed he had just encountered the enemy and was escaping to save his life, even though there were no other officers around to fire upon him. ("Witness Whitaker, who discovered the deputy, testified

_____

[1] Appendix F is the Order of the District Court granting habeas relief based on penalty phase ineffective assistance of counsel. *See Reaves v. Jones*, 2015 WL 13657202 (S.D. Fla. March 3, 2015).

that he saw a black man wearing red shorts and a white T-shirt running from the scene in a manner similar to men in Vietnam under fire." *Id.*) .

Yet the jury in this case "never learned of Mr. Reaves' mental disorder because his counsel's conduct undermined the adversarial process" Appendix F at *1. So, the jurors could not ask themselves whether Reaves' crime was, to some degree, a tragic consequence of a mental health condition brought on by the service Reaves provided heroically to them and their families during the Vietnam War.

B.    The Offense

Mr. Reaves is on death row at the Union Correctional Institution in Raiford, Florida. On September 23, 1986, Mr. Reaves, who was "Coked up" and unable to call a taxi (Appendix F at *1), misguidedly dialed 911 from a convenience store pay phone to ask for a taxi (Appendix F at *2). Sheriff's Deputy Richard Raczkowski arrived, checked to make sure Reaves had no outstanding warrants, and was then kind enough to ask the dispatcher to request a cab for Mr. Reaves (Appendix F at *2). He tried to help. "While the men waited, a .38 caliber pistol slipped from the waistband of Mr. Reaves' pants and fell to the ground" (Appendix F at *2). The men both went for the weapon, and Reaves recovered it. Deputy Raczkowski told Mr. Reaves to give him the gun. Mr. Reaves responded, "I'm not going to give you my gun. I just want to go home" (Appendix F at *2). "Raczkowski started to back up, reached for his weapon, and started running around the back of the patrol car" (Appendix F at *2). "Mr. Reaves said that as the Deputy started to run and was reaching for his weapon, 'I started shooting" (Appendix F at *2). "According to Mr. Reaves, 'I panicked, I

2

panicked . . . all I remember is I started shooting'." (Appendix F at *2). Mr. Reaves had determined in his disordered state that "[o]ne of us got to go," *Reaves v. State*, 639 So. 2d 1, 3 (Fla. 1994), and shot Deputy Raczkowski for no reason at all other than panic and confusion.

Mr. Reaves was then seen fleeing the scene "in a manner similar to men in Vietnam under fire," *Id.*, bobbing and weaving as if he believed he had just encountered the enemy and was escaping to save his life. It did not matter that there was nobody left to shoot at Mr. Reaves; his evasive maneuvering was not in response to the reality of the situation.

Upon being arrested, Mr. Reaves waived his rights, gave police a detailed, 53-minute taped confession, which was played at trial, answered all questions, and even drew a diagram of the scene of the shooting (Appendix F at *1-2). Mr. Reaves reported that he had been smoking cocaine on the night of the shooting (Appendix F at *1).

C.    Evidence Presented At Sentencing

At Mr. Reaves' trial, an appointed mental health expert, Dr. Weitz, testified that Mr. Reaves suffers from "Vietnam Syndrome," which "is not in the Diagnostic and Statistical Manual for Mental Disorders." *Reaves v. Crews*, 2013 WL 12309316 at *3.[2] As recounted by the district court:

---

[2] Order of the district court granting evidentiary hearing on penalty phase ineffective assistance of counsel. *Reaves v. Crews*, 2013 WL 12309316 (S.D. Fla. September 3, 2013). "[T]he Court has reviewed the record and the Florida Supreme Court's decision. The Court concludes that the Florida Supreme Court's decision is

> Dr. Weitz testified that he believes at the time of the crime, Mr. Reaves was experiencing psychological effects of serving in combat in Vietnam in addition to experiencing the effects of cocaine use and anti-social personality disorder. He testified that, in his opinion, Mr. Reaves did not run from the Officer initially because the officer had been helping him. However, as soon as the gun fell out and the Officer would not allow Mr. Reaves to retrieve it, Dr. Weitz believes that Mr. Reaves, based on his combat experience in Vietnam, felt that his life was in danger and that he had been put in a dangerous situation where he could end up dead. In Dr. Weitz's opinion, based on Mr. Reaves' prior military experience, Mr. Reaves was acting under the impression that he should shoot or he would be shot.

*Id.*

On the subject of war experience, fellow soldiers Hector Caban and William D. Wade, who had served with Mr. Reaves, offered some testimony as to the platoon's experiences there. *Id.* Trial counsel also presented several lay witnesses at the penalty phase to testify about Mr. Reaves' youth and formative years growing up in Gifford, Florida. They included Fran Ross, who testified that she grew up with Mr. Reaves but that after he returned from service in Vietnam, Mr. Reaves changed, got into drugs (R. 1896-1918); Reverend Leon Young (R. 1920-24); Will Otis Cobbs (R. 1925-35); Charlie Jones (R. 1934-39); and Ann Covington, Mr. Reaves' sister, (R. 1940-49). Following the penalty phase a non-unanimous jury recommended by a vote of ten (10) to two (2) that the judge sentence Mr. Reaves to death. The trial court followed the jury's recommendation. (R. 2320, 2328-35). The sentence of death was

---

an unreasonable determination of the facts in light of the state court record." *Id.* at *2.

4

upheld on direct appeal. *Reaves v. State*, 639 So. 2d at 3, 6.

D.    Reaves' State Motion For Postconviction Relief

Mr. Reaves originally filed a Fla. R. Crim. P. 3.850 motion on February 15, 1996, subsequently amended, that alleged both guilt and penalty phase violations of *Strickland v. Washington*, 486 U.S. 688 (1984). The violations included a failure to investigate available mitigation, including the impact of PTSD and the use of cocaine, failure to consult necessary experts, failure to properly prepare the defense psychologist, and, because of lack of investigation, a failure to challenge the qualifications and testimony of state witnesses. Appendix F at *21 n.17. The motion alleged multiple *Strickland* violations. *See* Appendix F at *10-11.

The lower state court denied evidentiary development on the claims and summarily denied the motion. The Florida Supreme Court affirmed, finding that "[a]ny of the proposed additional evidence [as to the penalty phase] would have been either irrelevant or cumulative." *Reaves v. State*, 826 So. 2d 932, 941 (2002) . However the Court remanded for an evidentiary hearing on guilt phase ineffectiveness, including trial counsel's failure to raise a defense of involuntary intoxication "and related subclaims." *Id.* at 944.[3] As to the postconviction claim of counsel's cumulative errors, challenging both the conviction and sentence, the Florida Supreme Court found that "[t]his claim has been rendered moot in light of our decision to

---

[3] The subclaims included the claim that trial counsel "was ineffective in not retaining experts who could testify properly as to the effects of substance abuse combined with his mental defects," *id.* at 939, which was broader in scope than voluntary intoxication and resulted in substantial mitigation evidence being presented on remand as to Reaves' combat PTSD and substance abuse disorder.

remand . . .." *Id.*    Much of the evidence subsequently introduced at the state evidentiary hearing on voluntary intoxication and the related subclaims was material to the issue of whether counsel was ineffective for failing to present that same mental health evidence as mitigation at the penalty phase.

E.    State Postconviction Evidentiary Hearing

At the state court evidentiary hearing following the 2002 remand, psychiatrist Richard Dudley testified that at the time of the offense Mr. Reaves was intoxicated, unable to form specific intent, suffered from PTSD and depression, and was a polysubstance abuser (PCR2. 159-223). Psychologist Dr. Barry Crown opined that Mr. Reaves suffered from frontal lobe organic brain damage and that he was unable to form specific intent at the time of the offense (PCR2. 238-69). PTSD expert, Vietnam veteran and clinical psychologist Dr. Erwin Parson testified that based on his evaluation Mr. Reaves suffered from combat-related PTSD (PCR2. 335-410). Neurologist Dr. Thomas Hyde confirmed Mr. Reaves' frontal lobe dysfunction and agreed that Mr. Reaves presented "strong elements" in support of a diagnostic finding of PTSD (PCR2. 455-81). Finally, University of Miami Professor of Neurology and substance abuse expert Dr. Debra Mash opined that Mr. Reaves was intoxicated at the time of the offense and showed signs and symptoms of combat-related PTSD (PCR2. 270-335).

The lower state court denied relief after the remand hearing, and the Florida Supreme Court then affirmed without any mention of the penalty phase. *Reaves v. State*, 942 So. 2d 874 (Fla. 2006).

F.    Federal Proceedings

Mr. Reaves timely filed a federal habeas petition and on August 16, 2011, the federal district court granted habeas relief as to Reaves' Claim IX (ineffective assistance of counsel at the penalty phase of Reaves' capital trial) and Claim XXII (ineffective assistance of counsel at the guilt phase of Reaves' capital trial). The court ordered a new trial as to Claim XXII and granted but stayed an evidentiary hearing on Claim IX., unless it became necessary to receive evidence related to counsel's performance at the penalty phase of the trial. *See Appendix D, Reaves v. Buss,* 2011 WL 13243586 (S.D. Fla. August 16, 2011).

The Eleventh Circuit Court of Appeals reversed the relief grant as to Claim XXII (voluntary intoxication) and remanded the case. *See Reaves v. Sec'y, Dep't of Corrs.,* 717 F.3d 886 (11th Cir. 2013). Accordingly, on September 4, 2013, the district court vacated the relief grant and ordered an evidentiary hearing on the issue of whether trial counsel provided ineffective assistance at the penalty phase of Mr. Reaves' capital trial. *Reaves v. Crews,* 2013 WL 12309316 (S.D. Fla. Sept. 4, 2013). An evidentiary hearing limited to three mitigation topics: mental health, substance abuse, and family background ran from March 10 to March 13, 2014.

G.    Federal Court Evidentiary Hearing[4]

Thomas Hyde, M.D., a behavioral neurologist (Doc. 77 at 16), who had evaluated Mr. Reaves prior to the evidentiary hearing in state court, testified that

---

[4] Doc. 77 in the district court record is the March 10, 2014 evidentiary hearing transcript. Doc. 78 is the March 11, 2014 transcript, Doc. 79 is the March 12, 2014 transcript and Doc. 80 is the March 13, 2014 transcript.

his finding was Mr. Reaves suffers from frontal lobe dysfunction, that being "the part of the brain that governs impulses, judgment, reasoning, complex problem solving" (Doc. 77 at 17)—the faculties that would prevent a man like Reaves from reacting to the appearance of the weapon as he did. In addition to the frontal lobe dysfunction, Dr. Hyde also found that Mr. Reaves suffers from PTSD (Doc. 77 at 20). Dr. Hyde explained that veterans with PTSD "often turn to substance abuse as a form of self-medication" (Doc. 77 at 20). Dr. Hyde explained that combat vets with PTSD experience "dissociative episodes; blanking out, flashbacks, nightmares, hyper vigilance, social isolation, functional impairment." Dr. Hyde also diagnosed Mr. Reaves as suffering from cocaine dependence (Doc. 77 at 21). Dr. Hyde explained that under the diagnostic criteria that were required for a diagnosis of PTSD at the time of Mr. Reaves's trial in 1992, Mr. Reaves would still have met the criteria (Doc. 77 at 21-23).

Richard Dudley, M.D., a psychiatrist, agreed with Dr. Hyde's findings of PTSD and cocaine dependence, and testified about how Mr. Reaves's well-adjusted, non-violent civilian personality before the Vietnam war contrasted with the man who came back after it. (Doc. 77 at 90-91). Dr. Dudley described how Reaves took to abusing substances such as alcohol and heroin as a coping mechanism after the War, which created more difficulties in his life (Doc. 77 at 92-94). Dr. Dudley recounted the symptoms of PTSD reported by Mr. Reaves that he experienced after his return from Vietnam (Doc. 77 at 95-96). He testified that Mr. Reaves had sought help from the VA, but they were unable to help him (Doc. 77 at 98). As a result of his comprehensive

8

evaluation of Mr. Reaves, Dr. Dudley diagnosed him with PTSD, as a result of his experiences in the military, and explained that the substance abuse that he practiced to cope with the PTSD exacerbated the symptoms (Doc. 77 at 99-100). Like Dr. Hyde, Dr. Dudley found that Reaves met the criteria for the statutory mental health mitigators at the time of the crime (Doc. 77 at 106). Like Dr. Hyde, Dr. Dudley found that Reaves met the 1992 criteria for PTSD and substance abuse disorder.

**David Price**, Ph.D. also testified about Reaves's PTSD. Dr. Price is a clinical psychologist with extensive experience working with PTSD patients, including at the VA (Doc. 77 at 152).

Dr. Price interviewed several lay individuals whose observations about Mr. Reaves corroborated his diagnosis of PTSD (Doc. 77 at 174). Reverend Young related that Reaves "was impulsive, that he was reckless, that he was paranoid, that he was always scared and felt someone was after him" (Doc. 77 at 171-72). Other individuals reported to Dr. Price that Reaves was "shellshocked, paranoid and would get spooked easily," "always jittery," "liked to be alone," "had flashbacks of Vietnam," "didn't like noise," and would have mood swings (Doc. 77 at 173). Jane James, Reaves' sister, described Reaves waking up in the night screaming, acting like he was shooting a gun (Doc. 77 at 174).

Dr. Price found that Reaves has "difficulty with depression and anxiety" which is consistent with PTSD (Doc. 77 at 186). Dr. Price did not believe Reaves was malingering or embellishing his symptoms (Doc. 77 at 187). As a result of his comprehensive evaluation, Dr. Price opined that Reaves suffers from PTSD as a

result of his combat experience in Vietnam (Doc. 77 at 188). Additionally, he suffered from a cocaine dependency (Doc. 77 at 189). Dr. Price testified that these diagnoses, together with the fact that Reaves was under the influence of cocaine at the time of the crime support a finding of statutory mitigators: extreme emotional disturbance and that Reaves' ability to conform his conduct to the law was substantially impaired at the time of the crime (Doc. 77 at 189-90). Dr. Price testified that his opinion was consistent with those of the other defense experts: Dr. Hyde, Dr. Dudley, Dr. Mash, and Dr. Parson (Doc. 77 at 194).

Dr. Barry Crown, a neuropsychologist and addictionologist, testified at the State evidentiary hearing in 2003 and then did a separate evaluation of Reaves in 2013 to address his substance abuse issues (Doc. 79 at 22). Dr. Crown testified about this history and discussed the effects of Mr. Reaves' drug use on his PTSD (Doc. 79 at 28-39). He stated that the combination of PTSD with drug addiction is doubly difficult because "you have startled response from both," with "recurring thoughts that are mixed with memory experiences form the past as well as sensory experiences form the present" (Doc. 79 at 39).

Dr. William Weitz, who had testified about Vietnam Syndrome at trial, also testified in the federal evidentiary hearing. Dr. Weitz testified that "the amount of effort, time, energy, and focus was on the trial phase, it was on the guilt phase and mitigation was not as critical a focus of myself certainly nor in my opinion of the attorney" (Doc. 77 at 101). He testified that "[t]he only reason I didn't diagnose PTSD [at trial] was I felt that one critical criteria in the DSM that was required in my

10

professional opinion wasn't met.[5] So I didn't diagnose posttraumatic stress disorder" (Doc. 77 at 104). Dr. Weitz also testified that he incorrectly diagnosed antisocial personality disorder, both in 1987 and in 1992, because he incorrectly based his analysis on misperceptions about Reaves' juvenile criminal history (Doc. 77 at 105).

There was also extensive lay witness testimony at the federal evidentiary hearing. This included testimony from Reaves' sister, Jane James, who explained how Reaves changed after Vietnam (Doc. 78 at 44-46). He hadn't done that before Vietnam, and seemed to be acting like a child in those situations (Doc. 78 at 46).

There was testimony concerning Reaves' experience as a combat soldier in Vietnam from fellow soldier Mr. Howard Wine, who testified that during his service he met Reaves and served in the same platoon from late January 1970 until about September 1970. He explained the intimacy of the relationship: "many nights we spent the night together because we have a poncho liner that we mend together in order to keep the rain off of you, off of your body. And he and I would, you know, bunk together every night on an air mattress in the jungle" (Doc. 78 at 81). Reaves is the soldier he best remembers and considers a friend from Vietnam because "we shared a tent together [during] nights, played cards together with each other, talked about the lady folks. Yeah" (Doc. 78 at 115). Mr. Wine said Reaves was part of a group of African-American soldiers he called "brothers": "you know, the brothers stayed on one

---

[5] He specifically testified his diagnosis of Mr. Reaves with PTSD was based on being provided during postconviction with reports from trial counsel's investigator that he never reviewed at trial and other items that support persistent re-experience, the support for criteria B of the DSM-IIR PTSD definition (Doc. 77 at 107-13; 117-20).

side and the other groups stayed on the other side basically because we just -- it wasn't out of prejudice. It was more out of the different style and likes of music. Okay? So we kind of hung together. We had -- you know, the brothers had a special handshake that they did with one another. It was just being ourselves, just being kids I guess" (Doc. 78 at 86).

Wine also testified that he and Reaves discussed their constant fear for their lives: "we used [to] call it half-stepping. Don't half-step. That means don't let your guard down, don't leave your weapon in one spot and go someplace else. You know, we all talked about that. That's the -- if you don't have no firepower, you're not safe" (Doc. 78 at 106). Mr. Wine recalled the combat situations that he and Reaves shared over an eight month period. (Doc. 78 at 115-24).

Other lay witnesses testified at the evidentiary hearing concerning Reaves' childhood, personality, and socialization in the community of Gifford, Florida, as a young man. They included Greg Watson, (Doc. 78 at 52-57); Rev. Leon Young, (Doc. 79 at 3-13); and Pastor Charlie Jones, (Doc. 78 at 63-67).

Trial attorney Jonathan Jay Kirschner also testified. (Doc. 80 at 4-76). Kirschner was appointed as a special public defender for Reaves in April 1991 (PCR. 2385). He testified that he had never tried a capital case at the time of the appointment and that Mr. Reaves' capital case was his first and last. (Appendix F at *2). After the Reaves trial, Kirschner testified, he stopped doing capital murder cases (Doc. 80 at 48).

Kirschner testified that the investigation documents indicating that Reaves

displayed symptoms of recurrent bad dreams may not have been provided to Dr. Weitz if Kirschner either misplaced them or had failed to review them (Doc. 80 at 69). If Dr. Weitz said he never saw them, "the problem would have had to have been at my office." (Doc. 80 at 69). He testified that he is aware that one of the reasons Dr. Weitz said in his pre-trial deposition he was unable to diagnoses PTSD was that he didn't find significant enough evidence of recurrent combat-related bad dreams (Doc. 80 at 77). Kirschner stated that if he had seen reports supporting that missing corroboration, he would have alerted Dr. Weitz: "And I subsequently have seen those and, yeah, you know, either I dropped the ball and never got them to Weitz or I didn't see it or I didn't, you know, send it to him or when he got it, he didn't see it or, you know, somewhere in that process the information did not get passed along."

Brandon Perron, trial counsel's lead investigator, also testified. (Doc. 79 at 207-240). He stated that he knew that PTSD would be a possible avenue of defense after his initial interview of Reaves. (Doc. 79 at 207). He testified that in his initial interview of Reaves he obtained support for presenting a PTSD defense. (Doc. 79 at 237-40).

### H.    District Court Ruling On Penalty Phase Ineffective Assistance Of Counsel

The district court undertook a painstaking chronological review of the evidence, allegations, and claims presented in this case during state proceedings and entered an order granting relief due to the ineffective assistance of trial counsel (Appendix F at *20-43). The State of Florida appealed the District Court's grant of habeas corpus relief. The Eleventh Circuit Court of Appeals reversed the grant of

relief, reported as *Reaves v. Sec'y, Dep't of Corrs.*, 872 F.3d 1137 (11th Cir. 2017), and then denied Petitioner's Petition(s) for Rehearing.

REASONS FOR GRANTING THE WRIT

I.    **The Eleventh Circuit's Findings Were Factually Inaccurate.**

In its September 28, 2017 opinion reversing the grant of habeas corpus relief by the District Court, the Eleventh Circuit asserted that the District Court had granted relief on a claim that Appellant did not make, a claim it dubbed the "combined impact" claim. *Reaves v. Sec'y, DOC.*, 872 F.3d at 1149. The Court set forth that the District Court's combined impact claim asserted that the combined errors of trial counsel at the guilt and sentencing phases rendered the result of the sentencing phase unfair. The Eleventh Circuit also found that: "When the case was before the state supreme court on that later appeal after remand, Reaves did not re-assert the penalty phase ineffectiveness claim or ask the court to reconsider its rejection of that claim four years earlier." *Reaves v. Sec'y, Dep't of Corrs.*, 872 F.3d at 1154.

In any postconviction motion, whether in state court or federal court, individual claims have to be considered in light of the entire pleading and indeed the entire record. In *Strickland v. Washington*, 486 U.S. 688 (1984), the Supreme Court made it clear that an ineffective assistance of counsel claim must be considered in the context of "whether counsel's assistance **was reasonable considering all the circumstances.**" *Strickland*, 486 U.S. at 688 (emphasis added). The circumstances surrounding counsel's preparation for and presentation of guilt phase evidence are always pertinent to the penalty phase, especially in cases like this one in which facts

14

that are pertinent to a guilt phase defense are also supportive of mitigation.

*Strickland* is clear that the court "must determine whether **in light of all the circumstances**, the identified acts or omissions by counsel were outside the wide range of professionally competent assistance. In making that determination the court should keep in mind that counsel's function, as elaborated in prevailing professional norms is to make the adversarial testing process work in the particular case." *Strickland*, 486 U.S. 690 (emphasis added).

In the instant case, the issues surrounding Mr. Reaves' mental health including PTSD, and his history of substance abuse and intoxication at the time of the offense were and should be relevant to preparation for both the guilt/innocence and penalty phases. In a case such as this it is impossible to separate the claims surgically, rather as a surgeon would separate conjoined twins. Indeed trial counsel has a duty to operate under a unified theory of the case from pretrial to penalty phase.

Applicable professional standards are set forth in the American Bar Association (ABA) Standards of Criminal Justice, "standards to which we have long referred as guides to determining what is reasonable." *Wiggins v. Smith*, 539 U.S. 510, 524 (2003). *Wiggins* makes clear that the ABA Guidelines[6] supply the guide to what is reasonable in investigating a capital case. Guideline 10.10.1 (2003), which deals with overall trial preparation, makes it clear that counsel should formulate an internally consistent theory of the case; that will minimize inconsistencies between

---

[6] American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (1989) (hereinafter "ABA Guidelines").

guilt and penalty phases. *See* ABA Guideline 10.10.1 (2003).[7] Thus, a court cannot logistically, nor should it, assess individual claims in a vacuum, devoid of the rest of the circumstances of the case. The District Court correctly assessed the penalty phase ineffectiveness claim in light of the guilt phase claims and correctly determined that a new penalty phase was justified.

Here the claims relating to mental health and substance abuse and intoxication were inextricably interrelated in this case. It is noteworthy that in 2002 the Florida Supreme Court's remand for an evidentiary hearing on guilt phase ineffectiveness, including trial counsel's failure to raise the defense of voluntary intoxication, also included the phrase "**and related subclaims**," allowing for the presentation of additional evidence. *See Reaves v. State*, 826 So. 2d 932, 944 (2002) (emphasis added).

Those "related subclaims" included the claim that trial counsel "was ineffective in not retaining experts who could testify properly as to the effects of substance abuse combined with his mental defects." *Id.* at 939. This claim is self-evidently broader in scope than voluntary intoxication and resulted in evidence being presented at the evidentiary hearing on remand as to Reaves' combat PTSD and substance abuse

---

[7] The Commentary to the Guideline emphasizes that credibility will be lost if counsel takes inconsistent positions at different stages of the trial. It states that "it is critical that well before trial, counsel formulate an integrated defense theory that will be reinforced by its presentation at both the guilt and mitigation stages. Counsel should then advance that theory during all phases of the trial including jury selection, witness preparation, pretrial motions, opening statements, presentation of evidence and closing argument." Commentary to Guideline 10.10.1 (2003). This emphasizes the need to consider the postconviction pleading as a whole rather than as individual surgically separated claims.

disorder.[8]

Counsel argued that these issues were material to the ineffective assistance of counsel at the penalty phase claims at the onset of the state evidentiary hearing on March 3, 2003. Tp. at 6-10. Counsel told the trial court that the scope of the hearing was not limited to voluntary intoxication and "the Supreme Court opinion also pointed out that the related [Ake] claim was also part of it." Tp. at 6. The *Ake v. Oklahoma* claim was claim 5 in the 1999 Rule 3.851 motion, found at PCR 496-501.[9]

The claim specifically incorporated "[a]ll other allegations and factual matters contained elsewhere in this motion" and then alleged that "Mr. Reaves was denied his rights under the federal Constitution to a professional, competent, and appropriate mental health evaluation for use in the aid of his defense. Counsel failed to obtain a professional, competent and appropriate mental health evaluation." PCR. 496.

---

[8] In its remand order, the Florida Supreme Court specifically recognized how the penalty phase presentation was wrapped up with the involuntary intoxication issue:

> During the penalty phase, even more evidence was presented which would have supported a voluntary intoxication defense, including additional testimony that Reaves was on drugs at the time of the crime. Moreover, numerous witnesses testified that Reaves had a history of serious drug abuse dating back to the Vietnam War, that he became involved in "heavy drugs" towards the end of his service in Vietnam, and that his prior convictions were drug-related.

*Id.* at 937-39.

[9] *Ake v. Oklahoma*, 470 U.S. 68 (1985).

17

The *Ake* claim also specifically set forth that "undersigned counsel has determined through the use of mental health experts who were available and would have testified **at the time of** trial that Mr. Reaves suffers from Post Traumatic Stress Disorder, brain damage and a severe addiction to drugs. The combination of PTSD and severe drug use caused Mr. Reaves to suffer from what is commonly known as dissociation (the inability of a person to have integration of action and thoughts) wherein he believes he is back in war. Mr. Reaves would have been incoherent and his ability to make proper judgements evaporated." PCR at 499. (emphasis added).

Paragraph 8 of the *Ake* claim further pled that "Mr. Reaves did not receive a **fair penalty phase** because he did not receive appropriate assistance by the mental health expert. The court's failure to ensure that he received appropriate assistance and adequate resources resulted in a violation of Mr. Reaves' due process rights and **right to a fair trial**." PCR. at 501 (emphasis added).

During that initial hearing after the remand the state trial court acknowledged that "the only problem is the [Florida] Supreme Court doesn't say anything about that issue. I've looked through the cases and it's like they've raised that issue and they didn't decide on it." PCR. at. 8. The trial court then opined that "[i]t's like it was left out dangling and no mention until the very end, and then they talk about related to subclaims and they refer to this as a related sub issue. So, if you're willing to go along with that, then that's what we'll do." PCR. at. 9.

After the hearing concluded written closing memos were provided and the trial court entered an order on March 10, 2004 denying relief. The order made reference

to the substantial evidence, material to the related subclaim that was presented at the evidentiary hearing, including the testimony of Dr. Weitz, Dr. Dudley, Dr. Mash, Dr. Parsons, Dr. Crown and Dr. Hyde. Order at 7. The trial court then denied the motion, "Because the Defendant has failed to establish that trial counsel was ineffective for failing to raise a voluntary intoxication defense and failing to retain experts who could testify properly as to the effects of substance abuse combined with the Defendant's mental defects, the motion is denied." Order at 9.

Mr. Reaves' March, 2004 circuit court motion for rehearing specifically noted that the then recent case of *Wiggins v. Smith*, 123 S. Ct. at 2536-37, had addressed a similar failure by trial counsel to investigate a capital defendant's social history for the purpose of developing potential mitigation but that the relevant applicable ABA professional standards referenced therein were equally applicable to investigation at both the guilt phase and sentencing phase. Mot. at 10-11.

The motion also argued that "presenting such evidence to the court in postconviction is a critical part of the process of proving ineffective assistance, *Ake* violations, and prejudice." Motion at 11. The final paragraph of the rehearing motion requested that "this court reconsider the denial of relief in light of the 100% military service related disability due to PTSD assigned to Mr. Reaves on August 28, 2003 by the United States Department of Veterans Affairs. A pleading dated December 9, 2003 memorialized this fact in the court file of the instant case." Motion at 13. The motion for rehearing concluded by asking "this Court to grant his request for rehearing, providing relief consistent with this motion, including the vacation of his

convictions and sentences, including his sentence of death." Mot. at 13. The District Court's analysis of the "combined impact" in granting relief was proper and in accordance with *Strickland* and its progeny.

The District Court also found that the Florida Supreme Court was unreasonable in 2002 for finding that any further evidence would be cumulative:

> In denying Mr. Reaves' post-conviction relief, the state court found, and the Florida Supreme Court agreed, that "[a]ny of the proposed additional evidence [as to the penalty phase] would have been either irrelevant or cumulative." *Reaves*, 826 So. 2d at 941 . . .. [T]hat was an unreasonable determination of the facts.

(Appendix F at *34). Nothing from the 2003 state court record was necessary to the district court's ruling. Considering the ways in which that record reaffirms the correctness of the ruling does not change the fact that the ruling stands on its own.

The Florida Supreme Court could have ruled on the penalty phase in its 2006 opinion following the remand hearing because it did not deny all ineffectiveness challenges to the penalty phase in 2002. When the Florida Supreme Court remanded for an evidentiary hearing it also allowed hearing on "related subclaims." *Id.* at 944 . The subclaims included the claim that trial counsel "was ineffective in not retaining experts who could testify properly as to the effects of substance abuse combined with his mental defects." *Id.* at 939 . This resulted in substantial evidence being presented at the evidentiary hearing on remand as to Reaves' combat PTSD and substance abuse disorder.

In his initial brief to the Florida Supreme Court following the remand hearing Mr. Reaves made multiple references to the ABA Guidelines as to both the guilt and

penalty phase and their interplay with *Wiggins* and *Strickland*. I.B. at 55-57, 69. Counsel also specifically requested "a review of the entire record of the case" and a new trial. I.B at 91. In the Reply Brief counsel specifically noted that trial counsel's failure to properly investigate and present the defense of voluntary intoxication was comparable to the overall failures by trial counsel at guilt **and penalty phase in** *Rompilla v. Beard*, 125 S. Ct. 2456, 2470-1 (2005), where there was a failure "to conduct a prompt investigation of the case and to explore all avenues leading to facts relevant to the merits of the case **and the penalty** in the event of conviction. Reply Brief at 10.

Counsel also noted the lower court's failure to consider "all of the relevant and material evidence [that] should have been heard at a full and fair evidentiary hearing on the issues included in this Court's remand" and further that "the decisions of the lower court operated to frustrate **a full review of the mixed question of fact and law involved in a determination of whether there was ineffective assistance of counsel.**" Reply Brief at 22.[10]

In his dissent to the denial of relief, Justice Anstead pointed to the Court's 2002 prior opinion that remanded for the 2003 evidentiary hearing. The section he referenced noted the interconnection between the penalty phase presentation and the guilt phase evidence:

---

[10] In addition, during the pendency of the appeal, counsel moved on October 21, 2005 for relinquishment of jurisdiction for the specific purpose of obtaining additional discovery from the state attorney concerning guilt phase and penalty phase ineffective assistance of counsel.

> During the penalty phase, even more evidence was presented which would have supported a voluntary intoxication defense, including additional testimony that Reaves was on drugs at the time of the crime. Moreover, numerous witnesses testified that Reaves had a history of serious drug abuse dating back to the Vietnam War, that he became involved in "heavy drugs" towards the end of his service in Vietnam, and that his prior convictions were drug-related.

*Reaves v. State*, 942 So.2d at 883.

Finally, Mr. Reaves' Motion for Rehearing to the Florida Supreme Court criticized the lack of any cumulative consideration, pointing out that "this Court's majority has nothing to say about the extensive expert testimony that was presented below except that "although the mental health experts opined at the evidentiary hearing that Reaves was intoxicated, they did not have any objective evidence to support their conclusions." Motion at 2.

The Eleventh Circuit's position that the Florida Supreme Court had no duty in 2006 to reconsider their penalty phase decision from 2002 is unreasonable. Had the Eleventh Circuit relied on the entire state court record, as would have been proper for a cumulative analysis consistent with *Strickland*, it would have found, as the district court did, that Appellee received constitutionally ineffective assistance of counsel at his penalty phase.

## II.    The Plain Language Of *Strickland* Instructs Courts To Evaluate Counsel's Cumulative "Errors" In The Prejudice Analysis.

*Strickland v. Washington*, 466 U.S. 668 (1984), itself requires courts to consider all of counsel's errors in the prejudice analysis. Not only did the Court consistently use the plural "errors" when discussing the prejudice prong of the

ineffective-counsel test, but it also emphasized the test's overall-fairness nature.

To show ineffectiveness, the Court settled on a test that requires a convicted defendant show both deficient attorney performance and prejudice. *Id.* at 692. As to the deficiency prong, the convicted defendant must show that "counsel made *errors* so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687 (emphasis added). In particular, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* (emphasis added). As to prejudice, the defendant must show "that counsel's **errors** were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687 (emphasis added).

Emphasizing the cumulative nature of the inquiry, the Court repeatedly referred to the plural "errors" throughout its opinion. The convicted defendant "must identify the **acts or omissions** of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690 (emphasis added). The Court continued: "It is not enough for the defendant to show that the **errors** had some conceivable effect on the outcome of the proceeding." *Id.* at 693 (emphasis added). "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the **errors** of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.* at 694 (emphasis added). Again, the Court explained: "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the **errors**, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695 (emphasis added); *see also id.* at

23

694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional **errors**, the result of the proceeding would have been different." (emphasis added)); *id.* ("In making the determination whether the specified **errors** resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." (emphasis added)).

It makes sense that the Court would require a cumulative analysis of counsel's errors in the prejudice inquiry; historically, the ineffective-counsel inquiry arose from the due process clause. *See* discussion *infra* Part IV. *Strickland* maintained the overall-fairness nature of the inquiry in the Sixth Amendment ineffective-counsel test. Indeed, *Strickland* made clear that the ineffective-counsel inquiry centered on the overall fairness of the trial: "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial system that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

III. **The Court Considers The Cumulative Impact Of Counsel's Errors.**

In addition to the plain language of *Strickland*, two subsequent Supreme Court decisions—*Williams v. Taylor*, 529 U.S. 362 (2000), and *Wiggins v. Smith*, 539 U.S. 510 (2003)—confirm that the ineffective-counsel prejudice inquiry must include a cumulative review of counsel's errors.

In *Williams*, the Court emphasized the cumulative nature of the ineffective counsel claim, concluding that the state court's "prejudice determination was

unreasonable insofar as it failed to evaluate the totality of mitigation evidence—both that adduced at trial, and the evidence in the habeas proceeding . . .." *Id.* at 397-98. It then conducted the appropriate ineffective-counsel inquiry. First, the Court noted counsel's multiple deficiencies in Williams's capital penalty phase:

> The record establishes that counsel did not begin to prepare for that phase of the proceeding until a week before the trial. They failed to conduct an investigation that would have uncovered extensive records graphically describing Williams' nightmarish childhood, not because of any strategic calculation but because they incorrectly thought that state law barred access to such records. Had they done so, the jury would have learned that Williams' parents had been imprisoned for the criminal neglect of Williams and his siblings, that Williams had been severely and repeatedly beaten by his father, that he had been committed to the custody of the social services bureau for two years during his parents' incarceration (including one stint in an abusive foster home), and then, after his parents were released from prison, had been returned to his parents' custody.
>
> Counsel failed to introduce available evidence that Williams was "borderline mentally retarded" and did not advance beyond sixth grade in school. They failed to seek prison records recording Williams' commendations for helping to crack a prison drug ring and for returning a guard's missing wallet, or the testimony of prison officials who described Williams as among the inmates "least likely to act in a violent, dangerous or provocative way." Counsel failed even to return the phone call of a certified public accountant who had offered to testify that he had visited Williams frequently when Williams was incarcerated as part of a prison ministry program, that Williams "seemed to thrive in a more regimented and structured environment," and that Williams was proud of the carpentry degree he earned while in prison.

*Williams*, 529 U.S. at 395-96 (internal citations and footnotes omitted). Then, the Court turned to prejudice. The Court did not assess individually the prejudice of any

single error.

Rather, it considered the prejudice of counsels' errors cumulatively:

> Williams turned himself in, alerting police to a crime they otherwise would never have discovered, expressing remorse for his actions, and cooperating with the police after that. While this, coupled with the prison records and guard testimony, may not have overcome a finding of future dangerousness, the graphic description of Williams' childhood, filled with abuse and privation, or the reality that he was "borderline mentally retarded," might well have influenced the jury's appraisal of his moral culpability. The circumstances recited in his several confessions are consistent with the view that in each case his violent behavior was a compulsive reaction rather than the product of cold-blooded premeditation.

*Id.* at 398 (internal citations omitted). The Court continued: "[T]he entire postconviction record, viewed as a whole and cumulative of mitigation evidence presented originally, raise a reasonable probability that the result of the sentencing proceeding would have been different if competent counsel had presented and explained the significance of all the available evidence." *Id.* at 399 (internal quotation marks omitted).

Two years after *Williams*, the Court once again emphasized the cumulative prejudice inquiry in *Wiggins v. Smith*, 539 U.S. 510 (2003). The Court reiterated the *Strickland* prejudice standard: "[W]e evaluate the totality of the evidence—'both that adduced at trial, **and the evidence adduced in the habeas proceedings**." *Wiggins*, 539 U.S. at 536 (quoting *Williams*, 529 U.S at 397-98) (emphasis added). In *Wiggins*, counsel failed to investigate and presented only a partial mitigation case. *Id.* at 534. The Court concluded that a reasonable attorney would have investigated, discovered, and introduced the following mitigation evidence: severe abuse by Wiggins's alcoholic

26

mother, physical and repeated rape while in foster care, homelessness, and diminished mental capacities. *Id.* at 535. To determine whether these errors prejudiced the petitioner, the Court explained that "we reweigh the evidence in aggravation against the totality of available mitigating evidence." *Id.* at 534. This new mitigation evidence combined with the fact that Wiggins had no prior convictions, the single mitigation fact that counsel presented to the jury, produce "a reasonable probability that at least one juror would have struck a different balance [in weighing aggravation and mitigation]." *Id.* at 537. The Court concluded "that the available mitigating evidence, **taken as a whole**, might well have influenced the jury's appraisal of Wiggins' moral culpability." *Id.* at 538 (emphasis added and internal citations omitted).

### IV.    Ineffective-Counsel And Co-Developing Materiality Law Mandate A Cumulative Prejudice Analysis.

In addition to the plain language of *Strickland* and subsequent cases applying a cumulative prejudice analysis, *Kyles v. Whitley*, 514 U.S. 419 (1995), necessitates a cumulative prejudice analysis. Prejudice and materiality analyses both arose out of due process and their resulting totality-of-the-circumstances inquiries developed together. Indeed, *Strickland* said as much: "[T]he appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution." *Strickland*, 466 U.S. at 694 (citing *United States v. Agurs*, 427 U.S. 97 (1976)); *Kyles*, 514 U.S. at 436 ("*Agurs* thus opted for its formulation of materiality, later adopted as the test for prejudice in *Strickland*"). *Kyles* left no doubt that prejudice and materiality must include a cumulative

27

analysis. *Kyles*, 514 U.S. at 436 (a *Bagley* materiality analysis must consider "suppressed evidence [] collectively, not item by item.").

Before the Sixth Amendment's incorporation, the Court viewed ineffective counsel as a violation of due process. In *Powell v. Alabama*, 287 U.S. 45 (1932), an Alabama capital case in which three black teenagers were sentenced to death for the rape of two white girls, the trial court effectively denied counsel to the defendants by appointing the entire bar, rather than a specific attorney, to their cases. In finding a due process violation, the Court employed a cumulative analysis and considered the prejudice of *all* errors on the fairness of the trial:

> In the light of . . . the ignorance and illiteracy of the defendants, their youth, the circumstances of public hostility, the imprisonment and the close surveillance of the defendants by the military forces, the fact that their friends and families were all in other states and communication with them necessarily difficult, and above all that they stood in deadly peril of their lives—we think the failure of the trial court to give them reasonable time and opportunity to secure counsel was a clear denial of due process.

*Powell*, 287 U.S. at 71.

Simultaneously, the materiality analysis was developing, focusing on the Due Process Clause's overall-fairness requirement rather than the prejudice caused by one particular act of the prosecution. The Court explained that the due process requirement, "in safeguarding the liberty of the citizen against deprivation through the action of the state, embodies the fundamental conceptions of justice which lie at the base of our civil and political institutions." *Mooney v. Holohan*, 294 U.S. 103, 112 (1935); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("The principle of *Mooney*

28

*v. Holohan* is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused.").

In 1963 the Court applied the Sixth Amendment's right-to-counsel to the states. *Gideon v. Wainwright*, 372 U.S. 335, 338-39 (1963). The Sixth Amendment inquiry is no different than a due process analysis: "The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause . . .." *Strickland*, 466 U.S. at 696; *Gideon*, 372 U.S. at 341 ("[T]hose guarantees of the Bill of Rights which are fundamental safeguards of liberty immune from federal abridgement are equally protected against state invasion by the Due Process Clause of the Fourteenth Amendment.").

After courts shifted their focus to the Sixth Amendment, the materiality and prejudice tests continued to evolve together, consistently referring to the other for guidance. The *Strickland* Court looked to the prosecutorial misconduct case of *United States v. Agurs*, 427 U.S. 97 (1976), for the prejudice prong of the ineffective counsel inquiry. 466 U.S. at 694 (citing *Agurs*, 427 U.S. at 104) ("the appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution"). Then, in *United States v. Bagley*, 473 U.S. 667, 682 (1985), the Court again acknowledged the intertwinement of the two standards when it adopted "the *Strickland* formulation of the *Agurs* test for materiality." In formulating the materiality analysis, the Court incorporated the *Strickland* prejudice analysis: "evidence is material only if there is a reasonable

probability that, had the evidence been disclosed to defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682.

As explained above, the plain language of *Strickland* requires a cumulative analysis. But if there was any doubt that the due process nature of the intertwined prejudice and materiality tests required a cumulative analysis, those doubts were laid to rest in *Kyles v. Whitley*, 514 U.S. 419 (1995). In *Kyles*, the Court was faced with a lower court that failed to conduct a cumulative materiality analysis. The *Kyles* Court emphasized that courts must assess *Bagley* materiality "in terms of suppressed evidence considered collectively, not item by item." 514 U.S. 419, 436 (1995) . The *Kyles* Court reversed the lower court's materiality analysis after concluding that "[t]he result reached . . . is compatible with a series of independent materiality evaluations, rather than the cumulative evaluation required by *Bagley*." *Id.* at 441. And, again, the Court recognized that *Strickland*'s prejudice test was adopted from *Agurs*' materiality test. *Id.* at 436.

## V.    A Non-Cumulative Analysis Produces Arbitrary Results Contrary To The Eighth Amendment.

The government acts contrary to the Eighth Amendment when it "inflicts upon some people a severe punishment that it does not inflict upon others." *Furman v. Georgia*, 408 U.S. 238, 274 (1972). Under a non-cumulative analysis, each court can determine how it groups attorney errors. For instance, for purposes of the prejudice analysis, courts could consider the failure to call a medical expert (1) as an individual error; (2) as a group with other expert-related errors, or (3) as a group with other mitigation errors. All three groupings could result in different prejudice analyses, yet

the underlying attorney conduct remains the same. Thus, without reason, some similarly-situated clients will receive relief, others will not.

This scenario plays out in courts that employ a non-cumulative analysis. In *Banks v. Cockrell*, 48 F. App'x 104 (5th Cir. 2002) (reversed on different grounds), the petitioner identified the following counsel errors: (1) failure to obtain a social history; (2) failure to prepare witnesses, including Banks' parents; (3) failure to retain and present expert psychological testimony explaining family background and future dangerousness, and (4) failure to interview a state penalty-phase witness. *Id.* The Fifth Circuit grouped those errors as it saw fit: (1) failure to obtain a social history and to investigate mitigating psychological evidence (combining errors one and three); (2) failure to prepare penalty phase witnesses, including Banks' parents; and (3) failure to interview a state penalty-phase witness. *Id.* at *17-19. After its own regrouping, the court considered each group individually, not cumulatively, in its prejudice analysis. *Id.* at *20.

Another court could have felt compelled to group these errors in different ways. For instance, a court logically could have grouped all witness errors together, grouping two, failure to prepare a witness, with four, failure to prepare a state penalty-phase witness. *See* John H. Blume & Christopher Seeds, *Reliability Matters: Reassociating* Bagley *Materiality,* Strickland *Prejudice, and Cumulative Harmless Error,* 95 J. Crim. L. & Criminology 1153, 1171 (2005). Relying on the same reasoning the Fifth Circuit gave for its grouping of one and three, a court could determine that all errors should be grouped together because the failure to investigate social history

31

is relevant to all three of the other errors. *Id.* Arbitrariness results. Two defendants that have committed the same crime may receive different results – one life and one death – solely because of a judge's grouping preferences.

## VI.    Conflict With Other Circuits

The *Strickland* Court instructed, and subsequent cases confirmed, that courts must cumulate counsel's deficient performances in the prejudice analysis. In addition to *Strickland*'s plain language, the due process roots of ineffective-counsel claims and the otherwise arbitrary results mandate the use of a cumulative prejudice analysis.

The opinion of the Eleventh Circuit in Mr. Reaves' case ignored this fundamental principle when it asserted that the District Court had granted relief on a claim that Appellant did not make, a claim it dubbed the "combined impact" claim. The opinion conflicts with its own case law and the view of other circuits. The necessity for this cumulative analysis trumps the 11th Circuit's mode of analysis requiring claim-specific issue raising.

In *United States. v. Gray,* 878 F.2d 702 (3rd Cir. 1989), the Third Circuit overturned a denial of § 2255 relief following an evidentiary hearing. The Circuit Court below found that although there was deficient performance by trial counsel there was no prejudice. In *Gray* the court of appeals reversed because the case was one "where the deficiencies in counsel's performance are severe and cannot be characterized as the product of strategic judgment." *Id.* at 711. This is affirmatively what the Circuit Court found in Mr. Reaves' case.

In granting Gray's motion and granting him a new trial, the Third Circuit

made a determination that ineffective assistance of counsel under *Strickland* required a searching inquiry of the entire record, looking at the record as a whole. Specifically, the Third Circuit noted, citing to *Strickland*, that "[t]he effect of counsel's inadequate performance **must be evaluated in light of the totality of the evidence at trial**: "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. *Strickland*, 466 U.S. at 696." *Gray*, 878 F.2d at 711 (emphasis added).

The Sixth Circuit also made the mistake of failing to properly review the entire record in a *Brady* case, a decision that this Court reversed in *Cone v. Bell*, 566 U.S. 449, 452 (2009) ("After a complete review of the trial and postconviction proceedings, we conclude that the Tennessee courts' rejection of petitioner's *Brady* claim does not rest on a ground that bars federal review. Furthermore, although the District Court and the Court of Appeals passed briefly on the merits of Cone's claim, neither court distinguished the materiality of the suppressed evidence with respect to Cone's guilt from the materiality of the evidence with respect to his punishment.")[11]

This Court took exception to the failure by the Court of Appeals to collectively assess all the evidence in support of Cone's claim. *Id.* at 474, 476. (". . . [N]o Tennessee court has reached the merits of his claim that state prosecutors withheld evidence that would have bolstered his defense and rebutted the State's attempts to cast doubt on his alleged drug addiction. Today we hold that the Tennessee courts' procedural rejection of Cone's *Brady* claim does not bar federal habeas review of the merits of

---

[11] *See Cone v. Bell*, 492 F.3d 743 (6th Cir. 2007).

that claim. Although we conclude that the suppressed evidence was not material to Cone's conviction for first-degree murder, **the lower courts erred in failing to assess the cumulative effect of the suppressed evidence with respect to Cone's capital sentence.**") (emphasis added).

Just as the decision of the Eleventh Circuit is inconsistent with other circuits it is also at odds with its own cases.[12] In *Blanco v. Singletary* the Eleventh Circuit reversed the district court's denial of penalty phase relief, finding that trial counsel's investigation and preparation for the penalty phase was woefully deficient, non-strategic and objectively unreasonable:

> In this case, the attorneys failed to conduct a reasonable investigation, and this failure was not a result of a tactical choice.
>
> * * *
>
> Counsel simply failed to investigate Blanco's mental health status. After the guilty verdict was rendered, one of the reasons counsel requested a continuance was because "I need to prepare . . . the psychiatric testimony of a Court–appointed psychiatrist." No psychiatrist had been procured prior to this point, and no examination of Blanco was ever conducted. At conference the day before the penalty phase began, counsel informed the court after a brief discussion with Blanco that no mental health mitigation evidence existed. Given that this discussion constituted the extent of counsels' investigation into the availability of mental health mitigating evidence, that such evidence was available, that absolutely none was presented to the sentencing body, and that no strategic reason has been put

---

[12] See *Hardwick v. Sec'y, Dep't of Corrs.*, 803 F.3d 541 (11th Cir. 2015); *Hardwick v. Crosby*, 320 F.3d 1127 (11th Cir. 2003); *Cave v. Singletary*, 971 F.2d 1513, 1519–20 (11th Cir. 1992); *Blanco v. Singletary*, 943 F.2d 1477 (11th Cir. 1991).

forward for this failure, we find that counsels' actions were objectively unreasonable.

*Blanco v. Singletary*, 943 F.2d 1477, 1500–03 (11th Cir. 1991). In *Cave v. Singletary*, a pre-AEDPA case, the Eleventh Circuit upheld the district court as to the denial of relief at the guilt phase and the grant of relief at the penalty phase:

> Competent counsel would have prepared for sentencing and would have produced witnesses that the district court found were ready and willing to testify for Cave. Even without this evidence the sentencing jury came within one vote of recommending life imprisonment. Petitioner has demonstrated prejudice such that our confidence in the sentence of death is greatly undermined. We therefore affirm the district court's order denying relief on the conviction and granting the writ of habeas corpus as it relates to sentencing.

*Cave v. Singletary*, 971 F.2d 1513, 1519–20 (11th Cir. 1992).

The district court granted penalty phase relief in Mr. Reaves case. In the order granting relief, the district court noted that "in *Cooper v. Secretary*, 646 F.3d 1328, 1353 (11th Cir. 2011), the Eleventh Circuit had found that 'the Florida Supreme Court's finding that the mitigation evidence presented at the evidentiary hearing was cumulative to that presented at sentencing was an unreasonable determination of the facts.'" The district court then found that in Mr. Reaves' case "[t]he state court's "cumulative" finding is particularly implausible where the only testimony at sentencing remotely similar to the available medical testimony, testimony about the ill-conceived "Vietnam Syndrome," was attacked by the prosecutor as illegitimate and not recognized by the medical community. I find that the state court's decision on penalty phase prejudice was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings pursuant to 28 U.S.C.

35

§ 2254(d)(2)." *Reaves v. Jones*, 2015 WL 13657202, at *36 (S.D.Fla., 2015) (emphasis added).

CONCLUSION

Petitioner, William Reaves, requests that certiorari review be granted.

Respectfully submitted,

WILLIAM M. HENNIS III
Litigation Director
Florida Bar No. 0066850
*Counsel of Record*

RACHEL L. DAY
Assistant CCRC-South
Florida Bar No. 0068535

Capital Collateral Regional Counsel-South
1 East Broward Boulevard, Suite 444
Fort Lauderdale, Florida 33301
Tel. 954-713-1284

April 5, 2018